**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOHN TINSLEY d/b/a** | § | |
| **Motorcars of South Texas and** | § | |
| **H.M. JR. AUTO SALES, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **WHITNEY NATIONAL BANK, N.A.,** | § | **SA-06-CV-0698 FB (NN)** |
| **KARR PLEX, LTD., and** | § | |
| **KEN SHERECK,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM AND RECOMMENDATION**
**REGARDING MOTIONS FOR SUMMARY JUDGMENT**

**TO: Hon. Fred Biery**
**United States District Judge**

This memorandum and recommendation addresses the motions for summary judgment pending in this case. In the first motion, defendant Whitney National Bank (the Bank) seeks summary judgment on all claims brought by plaintiff John Tinsley d/b/a Motorcars of South Texas and H.M. Jr. Auto Sales, Ltd. (collectively, Tinsley).[1] In the second motion, Tinsley seeks summary judgment on his claim under section 10:4-302 of the Louisiana Revised Statutes (Louisiana section 4-302).[2] I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the District Court's order referring all pretrial matters to me for disposition by order or to aid the District Court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[3] After considering the motions and the pleadings in

[1]Docket entry # 55.

[2]Docket entry # 59.

[3]Docket entry # 27.

this case, I recommend entering summary judgment in favor of the Bank on all of Tinsley's claims.

**Jurisdiction**

The District Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because it involves a controversy between citizens of different states—Texas and Louisiana—and the amount in controversy exceeds $75,000.00. The plaintiffs are citizens of Texas. The defendants are citizens of Louisiana.

**Tinsley's Claims**

Tinsley is in the business of buying and selling used automobiles in San Antonio, Texas. Tinsley alleges that he sold ten automobiles to Louisiana car dealers, defendants Karr Plex and Ken Shereck (together, Karr Plex), for $213,327.50.[4] Karr Plex transported the automobiles to Louisiana and sold them. Tinsley alleges that Karr Plex paid him with ten checks drawn on the Bank, but that the Bank dishonored the checks based on a stop payment order by Karr Plex.

Tinsley alleges that Karr Plex sold the automobiles intending to avoid paying for them. Tinsley alleges that the Bank wrongfully retained the checks and failed to pay or return them for an inordinate amount of time, violating Louisiana section 4-302. Tinsley explains that as a result of the non-payments, the line of credit for his inventory is accruing interest at 18% per annum. The clerk entered a default against Shereck and Karr Plex on April 30, 2007.[5]

As causes of action against the Bank, Tinsley alleges that the Bank is liable under Louisiana section 4-302 for the amount of the checks, plus consequential damages; that a Bank

[4] *See* docket entry # 1.

[5] Docket entry # 44. *See* docket entry # 43 (motion for entry of default).

employee conspired with Karr Plex to commit fraud and theft of the ten automobiles; and that the Bank was negligent by holding the checks beyond the midnight payment/return deadline set out in Louisiana section 4-302.

Previously, the Bank moved to dismiss Tinsley's claims on grounds that Louisiana section 4-302 does not apply to Karr Plex's checks because the checks were collection items that were not subject to Louisiana section 4-302's midnight deadline. In my first memorandum and recommendation, I explained that the evidence properly before the District Court did not show that the checks were collection items and that a motion for summary judgment would be needed to show whether the checks were subject to Louisiana section 4-302's midnight deadline rule. Since that time, the parties engaged in discovery and moved for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6]

**Tinsley's Claims under Louisiana Section 4-302**

Both the Bank and Tinsley ask for summary judgment on Tinsley's claim under Louisiana section 4-302. The Bank maintains that it is entitled to summary judgment because Louisiana section 4-302 applies to demand items and the Karr Plex checks are not demand items. The Bank argues that Tinsley's bank—Security State Bank—forwarded the checks to the Bank for collection outside the normal banking channels. The Bank maintains the checks are collection items rather than demand items. Thus, the Bank maintains that it is not liable for the checks under Louisiana section 4-302 because that section applies to demand items.

---

[6]FED. R. CIV. P. 56(c).

Tinsley contends that the four corners of the collections advices accompanying the checks show that the items were demand items subject to Louisiana section 4-302. Tinsley argues that because the collection advices reflected that the checks were payable on "sight," the checks were demand items subject to Louisiana section 4-302's midnight deadline rule. Tinsley maintains that the court may only look at the collections advices to determine whether the checks were demand items subject to the midnight deadline rule.

Louisiana section 4-302 is set out below:

> (a) If an item is presented to and received by a payor bank, the bank is accountable for the amount of:
>
> (1) a *demand* item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item *beyond midnight of the banking day of receipt* without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or
>
> (2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.[7]

This provision establishes a midnight deadline for either paying a check or returning it. On its face, the provision applies to a demand item. There is no Louisiana case law interpreting this provision that would help in resolving this dispute; however, Louisiana section 4-302 parallels section 4-302 of the Uniform Commercial Code (UCC). A banking treatise advises the following about a bank's liability for nonpayment under UCC section 4-302:

> Revised Section 4-302(a)(1) specifically applies to a "demand item." It does not apply to a "collection item"' (that is distinctly different from a "demand item") which is an item that is sent to a bank at which the drawer maintains an account, other than for immediate payment, with specific collection instructions. In this

[7] LA. REV. ST. § 10:4-302 (emphasis added).

> latter case, the bank is a collecting bank and therefore the midnight deadline does not apply to the actions of the collecting bank in handling the collection item.[8]

This principle is based on a Florida court of appeals opinion[9] making this distinction about a pre-revised UCC provision and a more recent Southern District of Florida decision relying on that distinction.[10] Because the distinction indicates that UCC section 4-302 does not apply to collection items, whether Karr Plex's checks are collection items is dispositive of Tinsley's claim because Louisiana section 4-302 parallels the UCC provision.

A banking treatise identifies the following factors as significant in determining whether an item is a collection item or demand item:

> a. Was the item sent through the standard bank collecting system for checks, or was it handled as a special item outside normal clearing channels?
>
> b. Was the item accompanied by a collection advice?
>
> c. Did the seller's bank request a special pay/dishonor advice?
>
> d. Was the seller given provisional credit for deposit of the item allowing the funds to be withdrawn after a specific period of time, or did the bank of first deposit impose a hold on the funds until it affirmatively received word that the

---

[8] ANN GRAHAM, BRUCE A. HEITZ, KENNETH M. LAPINE, DENNIS LASSILA, BURTON V. MCCULLOUGH, PAUL S. PILECKI, ROBERT M. TAYLOR, & HAROLD WEISBLATT, BANKING LAW § 135.10, editor's note (published by Matthew Bender) *available on* Lexis. *See* MICHIE ON BANKS & BANKING, ch. IX, § 167 ("The distinction between "demand" and "collection" items is this: a demand item is presented for immediate payment, while a collection item is one which is delivered to a bank with the understanding that the bank will pay upon the item if and when sufficient funds are deposited in the drawer's account to cover the check. The midnight deadline rule is, therefore, entirely inconsistent with the collection process under which a bank accepts a check with the understanding that it is to be held until sufficient funds come into drawer's account allowing for the payment of the check. *SCADIF, S.A. v. First Union Nat'l Bank*, 208 F. Supp. 2d 1352 (S.D. Fla. 2002)."), *available on* Lexis.

[9] *See Bank of Miami v. Banco Industrial Y Ganadero Del Beni, S.A.*, 515 So. 2d 1038, 1040 (Fla. Dist. Ct. App. 1987).

[10] *See SCADIF, S.A. v. First Union Nat'l Bank*, 208 F. Supp. 2d 1352, 1367 (S. D. Fla. 2002).

item has been paid?[11]

"An item that is intended to be a collection item is sent accompanied by a collection letter that provides instructions to the bank to which it is sent for collection."[12] The Bank presented the summary-judgment evidence discussed below to show that: Tinsley—or his agent—presented the Karr Plex checks to Security State Bank for deposit. Security State Bank then sent the checks to the Bank for collection.

First, the Bank presented copies of the front and back of nine Karr Plex's checks.[13] Tinsley's complaint refers to each of the checks. Tinsley listed ten checks in his complaint,[14] but has since waived his claim about the tenth check.[15] The copies of the checks do not show whether they were presented as collection items or demand items.

Second, the Bank presented a deposition by the Senior Vice President of Security State Bank—Larry Neal.[16] Neal testified about Security State Bank's procedures for handling collection items, explained how those procedures differ from those for demand items, and stated that Security State Bank used its procedures for collection items for the nine Karr Plex checks.[17]

---

[11]*See* BARKLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS & CREDIT CARDS § 6.02[2][K], *available on* Westlaw.

[12]ANN GRAHAM, BRUCE A. HEITZ, KENNETH M. LAPINE, DENNIS LASSILA, BURTON V. MCCULLOUGH, PAUL S. PILECKI, ROBERT M. TAYLOR, & HAROLD WEISBLATT, BANKING LAW § 134.05, editor's note (published by Matthew Bender) *available on* Lexis.

[13]Docket entry # 55, exh. B.

[14]Docket entry # 1, ¶ 4d.

[15]Docket entry 67, ¶ 1b.

[16]Docket entry # 55, exh. A.

[17]*Id*. at pp. 46-56.

Neal confirmed that the Karr Plex checks were presented to the Bank as collection items.[18] Neal explained that the checks did not go through regular banking channels,[19] but were sent by Security Sate Bank's Collection Department to the Bank for collection.[20] He further stated that the items were never deposited into the account of its customer—plaintiff H.M. Jr. Auto Sales—and that Security State Bank did not give H.M. Jr. Auto Sales any provisional credit for the checks pending collection.[21] Although when pressed on cross-examination Neal also testified that he considered the checks to be demand items because the accompanying collections advices reflected that the checks were payable on "sight," he explained that his opinion was based on his understanding of the UCC[22] and confirmed on redirect that the checks were forwarded to the Bank as collection items.[23] Neal's deposition indicates that the nine Karr Plex checks were collection items because it shows that Security State Bank served as a collecting bank and forwarded the checks the Bank for collection.

Third, the Bank submitted an affidavit by an Assistant Vice President for the Bank—Jerry J. Ockman.[24] In his affidavit, Ockman stated that the Bank received nine collection letters accompanied by the nine Karr Plex checks. He attested that the collection letters included the

---

[18]*Id*. at p. 14, lines 1-21 & p. 42, lines 12-15.

[19]*Id*. at p. 92, line 13 to p. 93, line 5.

[20]*Id*. at p. 13, line 15 to p. 14, line 21 & p. 15, line 24 to p. 16, line 19.

[21]*Id*. at p. 33, lines 14-23.

[22]Docket entry # 59, exh. 4, p. 63, line 2 to p. 67, line 15 & p. 74, lines 1-9.

[23]*Id*. at pp. 108-09.

[24]Docket entry # 55, exh. G.

special instruction to "PLEASE REMIT CASHIER CHECK PAYABLE TO SECURITY STATE BANK." Ockman explained that this instruction meant Security State Bank wanted to ensure that there were sufficient funds to cover the checks before it allowed its customer to access the funds. Ockman then discussed the Bank's actions for handling collection items. Ockman explained that rather than remit cashier checks, the Bank returned the checks to Security State Bank because defendant Ken Shereck—principal of its customer Karr Plex—requested stop payments on the checks. A copy of the Bank's "incoming collection letter history" reflecting receipt of the nine Karr Plex checks is attached to the deposition.[25] Ockman's deposition indicates that the Bank received the nine Karr Plex checks as collection items.

Fourth, the Bank attached copies of nine documents captioned, "COLLECTION."[26] One of the documents corresponds to each of the nine checks. Each document is addressed to the Bank and reads "WE ENCLOSE FOR COLLECTION AND RETURNS." The documents reflect both general and special instructions. The general instructions read as follows: "Wire non-payment of all items $500 and over. Protest all unpaid items marked X. Unless instructed otherwise deliver documents only upon payment. Do not hold for convenience of payers." The special instructions read as follows: "Please remit cashier check payable at Security State Bank." Those documents are stamped, "RETURNED UNPAID . . . PMT STOP." These documents indicate that the nine Karr Plex checks were collection items because it shows that Security State Bank sent the checks to the Bank for collection with instructions.

Fifth, the Bank attached copies of nine documents captioned, "ADVICE INCOMING

---

[25]*Id*. at exh. G-6.

[26]Docket entry # 55, exh. B.

COLLECTION LETTER."[27] One of the documents corresponds to each of the nine checks. The documents are addressed to the Collections Department of Security State Bank and are annotated "RETURNED UNPAID . . . PMT STOP." These documents indicate that the Karr Plex checks were collection items because they reflect that Security State Bank sent the checks to the Bank for collection.

Sixth, the Bank presented copies of nine documents captioned, "OWNER'S RECORD COLLECTION."[28] One of the documents corresponds to each of the nine Karr Plex checks. The documents are addressed to the Bank and read "PLEASE REMIT CASHIER CHECK PAYABLE TO SECURITY STATE BANK" and indicates a "due date" of "SIGHT." Those documents are annotated as "returned unpaid." These documents indicate that the nine Karr Plex checks were collection items because they reflect the results of collection efforts.

The Bank's evidence indicates that Security State Bank acted as Tinsley's agent and sent the Karr Plex's checks to the Bank for collection. The evidence shows that: (1) the checks were not sent through the standard bank collecting system for checks, but were handled as collection items outside normal clearing channels; (2) the checks were accompanied by collection advices with special instructions; and (3) Security State Bank did not give provisional credit for the deposit of the nine checks but instead sought collection via cashier checks. Together, the Bank's summary-judgment evidence shows that the nine Karr Plex checks were collection items, not demand items.

Tinsley, however, steadfastly maintains that the checks were demand items subject to

---

[27]Docket entry # 55, exh. G-2.

[28]Docket entry # 55, exh. D.

Louisiana section 4-302's midnight deadline rule. He relies on the collection advices which indicate that the Karr Plex checks were due on "sight" and insists that the court cannot look beyond the four corners of these documents in determining whether the checks were demand items. Tinsley also objects to most of the Bank's summary-judgment evidence on hearsay grounds. The law is well-settled concerning the applicability of the four corners rule in contracts law,[29] but I located no authority limiting the court to the four corners of a check or a collection advice in determining whether a check is a demand item. I overrule Tinsley's objections about the evidence discussed in this memorandum because that evidence is proper summary-judgment evidence. I overrule as moot his objections to the evidence I did not rely upon in reaching my recommendation.

As for Tinsley's argument about the collection advices, the law does not dictate that designating a check as due on "sight" automatically makes the check item a demand item. The UCC does not define "demand item" or "collection item," but it defines "check" as "(i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check."[30] I did not find a definition of "sight," but a banking treatise characterizes the term "sight draft" as an inexact term used by the banking industry to refer to the maturity of the draft.[31] "A sight draft is payable on demand, while a time draft is payable a certain time after

---

[29]*See Billingsley v. Bach Energy Corp.*, 588 So. 2d 786, 790 (La. Ct. App. 1991) ("Generally, where the words of a contract are clear, explicit, and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence.").

[30]U.C.C. § 3-104.

[31]BARKLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS & CREDIT CARDS § 13.01[1] , *available on* Westlaw.

acceptance by the drawee or "after sight."[32] This explanation does not support Tinsley's argument where the summary judgment evidence shows that Security State Bank sent the Karr Plex checks to the Bank as collection items. Had Tinsely presented the Karr Plex checks to the Bank, the checks would have been demand items. But that is not what he did. Instead, Tinsley presented the checks to Security State Bank and that bank acted as Tinsley's agent in collecting on the checks from the Bank. As such, the Karr Plex checks were collection items that were not subject to Louisiana section 4-302's midnight deadline rule. The Bank is entitled to summary judgment on Tinsley's claim.

**Tinsley's Other Claims**

The Bank also argues that it is entitled to summary judgment on Tinsley's negligence because that claim is based on breach of the duty to pay or return Karr Plex's checks by Louisiana section 4-302's midnight deadline. I reported in my first memorandum and recommendation that Tinsley had not specified the legal authority for his negligence claim. I explained Louisiana section 4-202 requires banks to exercise ordinary care and provides for a longer reasonable time in which to return checks, and suggested that Tinsley clarify the nature of his claim by way of an amended complaint. Tinsley did not amend his complaint and he did not respond to the Bank's summary-judgment argument. The summary-judgment evidence indicates that the Bank received the Karr Plex checks on April 19, 2006 and returned them to Security State Bank on April 26, 2006. Under these circumstances, Tinsley may have determined that no basis exists for a negligence claim. Tinsley has waived any claim that the Bank was negligent by returning the checks after an unreasonable period of time and by failing to exercise ordinary care

---

[32]*Id*.

because he did not amend his complaint and he did not respond to the Bank's summary-judgment argument.

Finally, the Bank argued that it is also entitled to summary judgment on Tinsley's conspiracy claim. Tinsley has since waived that claim.[33]

**Recommendation**

The Bank has shown that the Karr Plex checks were collection items that are not subject to Louisiana section 4-302's midnight deadline rule; therefore, the Bank is entitled to summary judgment on Tinsley's claim under that provision. Tinsley has waived his other claims. Consequently, I recommend that the District Court GRANT the Bank's motion for summary judgment (docket entry # 55), DENY Tinsley's motion for summary judgment (docket entry # 59), and ENTER summary judgment in favor of the Bank.

This recommendation, if accepted, does not close this case. As previously noted, the Clerk entered default against Shereck and Karr Plex. However, plaintiffs have not filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). By separate Order entered this date, plaintiffs have been directed to file their Rule 55(b)(2) motion within the next 30 days.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum

---

[33] *See* docket entry # 67.

and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[34] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[35] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[36]

**SIGNED** on March 26, 2008.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[34] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[35] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[36] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).